UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

VASILI TSERETELI, and VASZURELE LTD.    :
on behalf of themselves and all others similar    :    Docket No.
situated,    :    08 Civ.10637 (LAK)
                                Plaintiffs,    :
                                            :
      -against-    :
                                            :

RESIDENTIAL ASSET SECURITIZATION    :
TRUST 2006-A8, CREDIT SUISSE    :
SECURITIES (USA) LLC, MOODY'S    :
INVESTORS SERVICE, INC., and THE    :
MCGRAW-HILL COMPANIES, INC.    :
                                            :
                        Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## LEAD PLAINTIFF'S MEMORANDUM OF LAW
## <u>IN SUPPORT OF ITS MOTION FOR CLASS CERTIFICATION</u>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF FACTS .......................................................................... 4

THE PROPOSED CLASS REPRESENTATIVE ............................................ 6

PROCEDURAL HISTORY.......................................................................... 6

ARGUMENT ............................................................................................. 7

I.     THE PROPOSED CLASS SATISFIES THE PREREQUISITES
       OF RULE 23(a)............................................................................... 9

       A.     The Members of the Proposed Class Are So Numerous
              That Joinder Is Impracticable....................................................... 9

       B.     There Are Questions of Law and Fact Common to the
              Members of the Class................................................................ 10

       C.     Lead Plaintiff's Claims Are Typical of the Claims of Other
              Class Members......................................................................... 14

       D.     Lead Plaintiff Will Fairly and Adequately Represent the
              Class....................................................................................... 16

II.    THE PROPOSED CLASS SATISFIES THE PREREQUISITES
       OF RULE 23(b)(3)........................................................................... 18

       A.     Common Questions of Law and Fact Predominate .................... 19

       B.     A Class Action Is the Superior Method of Adjudicating the
              Claims Asserted Here ............................................................... 21

III.   THE COURT SHOULD APPOINT LEAD COUNSEL FOR
       LEAD PLAINTIFF AS CLASS COUNSEL UNDER RULE 23(g)................... 22

CONCLUSION......................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Amchem Products, Inc.*,
    521 U.S. 591 (1997)......................................................................... 16, 19, 21-22

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000).................................................................. 14, 16-17

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) .......................................................................21

*Cent. States Se. & Sw. Areas Health & Welfare
Fund v. Merck-Medco Managed Care, LLC*,
    504 F.3d 229 (2d Cir. 2007)........................................................................7, 9, 14

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995).......................................................................... 9-10

*DuPont Glore Forgan, Inc. v. Am. Tel. & Tel. Co.*,
    69 F.R.D. 481 (S.D.N.Y. 1975) .....................................................................22

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    245 F.R.D. 147 (S.D.N.Y. 2007) .............................................................. 13-14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009).........................................................................20

*Fogarazzo v. Lehman Brothers, Inc.*,
    263 F.R.D. 90 (S.D.N.Y. 2009) .................................................................7, 9, 11

*General Telephone Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982).......................................................................................16

*In re Initial Public Offering Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006)............................................................................ 8-9

*In re Initial Public Offering Litig.*,
    483 F.3d 70 (2d Cir. 2007)...........................................................................20

*Lapin v. Goldman Sachs & Co.*,
    254 F.R.D. 168 (S.D.N.Y. 2008) .................................................................18

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)...........................................................................7

*In re Monster Worldwide, Inc. Sec. Litig.*,
  251 F.R.D. 132 (S.D.N.Y. 2008) .......................................................................16

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002) ...........................................................................19

*In re NTL, Inc. Sec. Litig.*,
  02 Civ. 3013 (LAK) (AJP), 2006 U.S.
  Dist. LEXIS 5346 (S.D.N.Y. Feb. 14, 2006) .....................................7, 11, 16, 19

*In re NYSE Specialists Sec. Litig.*,
  260 F.R.D. 55 (S.D.N.Y. 2009) ..................................................... 11, 14-15, 21

*In re Parmalat Sec. Litig*,
  04 Civ. 0030 (LAK), 2008 U.S. Dist.
  LEXIS 64296 (S.D.N.Y. Aug. 21, 2008) ................................................ *passim*

*Port Auth. Police Benvolent Ass'n v. Port Auth.*,
  698 F.2d 150 (2d Cir. 1983) ...........................................................................10

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ...........................................................................14

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) ...........................................................................20

*Surowitz v. Hilton Hotels Corp.*,
  383 U.S. 363 (1966) ........................................................................................17

*Teamsters Local 445 Freight Div. Pension Fund v. Bombadier Inc.*,
  546 F.3d 196 (2d Cir. 2008) .............................................................................8

*Trief v. Dun & Bradstreet Corp.*,
  144 F.R.D. 193 (S.D.N.Y. 1992) .....................................................................10

*In re Vivendi Universal, S.A. Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) ................................................... 13, 15, 20-21

*In re Warner Chilcott Ltd. Sec. Litig.*,
  06 Civ. 11515 (WHP), 2008 U.S. Dist.
  LEXIS 7613 (S.D.N.Y. Feb. 4, 2008) ..............................................................20

*In re WorldCom, Inc. Sec. Litig.*,
  219 F.R.D. 267 (S.D.N.Y. 2003) .....................................................................13

Lead Plaintiff Vaszurele Ltd. ("Lead Plaintiff") respectfully submits this memorandum in support of its motion for an order, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), to certify a class as defined below, appoint it as Class Representative, and appoint its counsel as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

## PRELIMINARY STATEMENT

Lead Plaintiff requests certification of a proposed class (the "Class") consisting of all persons who purchased the Senior Mortgage Pass-Through Certificates ("Certificates")[1] issued on June 28, 2006 (the "Offering") by the Residential Asset Securitization Trust 2006-A8 ("RAST" or the "Trust") pursuant and/or traceable to the Offering Documents (defined below).[2] Lead Plaintiff also seeks to be appointed as the Class Representative and for its counsel, Wolf Popper LLP, to be appointed as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

Class certification is appropriate if the requirements of Rule 23, commonly referred to as "numerosity," "commonality," "typicality," "adequacy," "predominance," and "superiority," are satisfied. *See* Fed. R. Civ. P. 23(a)(1)-(4), 23(b)(3). As discussed below, all of these elements are met here.

---

[1] The relevant CUSIPs for each of the Certificates are: 761119AA4, 761119AB2, 761119AC0, 761119AD8, 761119AE6, 761119AF3, 761119AG1, 761119AH9, 761119AJ5, 761119AK2, 761119AL0, 761119AM8, 761119AN6, 761119AP1, 761119AQ9, 761119AR7, 761119AS5, 761119AT3, 761119AU0, 761119AV8, 761119AW6, 761119AX4, 761119AY2, 761119AZ9, 761119BA3, 761119BB1.

[2] Excluded from the proposed Class are Defendant Credit Suisse and its respective officers, affiliates and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest. Complaint (defined below) at ¶ 106.

1

*First*, based on a limited set of trading data Lead Plaintiff has received to date through discovery i has identified at least 97 Class members and believes that numerous additional Class members exist.[3]  Even at this preliminary stage of discovery, the amount of identified Class members exceeds the presumptive 40 class member threshold for a finding of numerosity.

*Second*, the commonality requirement of Rule 23 is met as this action involves many common issues of law and fact.  As detailed in the Amended Class Action Complaint, filed April 16, 2009 (Dkt. No. 25) (the "Complaint")[4], Lead Plaintiff alleges a that Defendant Credit Suisse sold the Certificates to investors in a firm-commitment underwriting, pursuant to Offering Documents that contained materially untrue statements and omitted statements of material fact.  The questions of law and fact common to the Class include: (i) whether the Offering Documents contain untrue statements or omit statements of fact; (ii) whether the untrue statements or omissions are "material"; and (iii) to what extent the members of the Class have sustained damages pursuant to the statutory measure of damages.

*Third*, Lead Plaintiff's claims are typical of the Class's claims.  Lead Plaintiff and the Class purchased the Certificates issued in the Offering pursuant to the Offering Documents and are entitled to recover damages in accordance with the statutory formulas

---

[3]  Schedules reflecting the 569 "Market Participants" and 97 Class members are attached as Exhibits A and B, respectively, to the accompanying Declaration of James A. Harrod In Support of Lead Plaintiff's Motion for Class Certification ("Harrod Declaration").

[4]  Pursuant to Your Honor's Individual Practices, a copy of the Complaint is attached as Exhibit C to the Harrod Declaration.  References to paragraphs in the Complaint are cited as "¶ _".

set forth in Sections 11(e) and 12(a)(2) of the Securities Act.[5]  The injuries suffered by

Lead Plaintiff and the Class arise from exactly the same events, practices and conduct;

thus, the claims of Lead Plaintiff and the Class are typical of one another.

       *Fourth*, Lead Plaintiff will fairly and adequately protect the interests of the Class.

As discussed immediately above, both Lead Plaintiff's and the Class's injuries are

reflected in the decline in value of the Certificates.  Lead Plaintiff is not subject to any

unique defenses.  Therefore, there is no antagonism between Lead Plaintiff and the Class.

Lead Plaintiff has selected one of the most experienced securities class action law firms

in the country to represent it and the Class.  As such, the fourth element for certification

under Rule 23(a) is met.

       *Fifth*, the common issues of law and fact summarized above plainly predominate

over individual issues.  The issue of whether the Offering Documents contain materially

untrue statements and omissions will unquestionably predominate over any other issues

that may be present in this action and will affect all Certificate holders.  *See* December

10, 2010 Expert Report of Professor Steven P. Feinstein, PH.D., CFA ("Feinstein

Report"), attached as Exhibit D to the Harrod Decl., at ¶ 81 ("Untrue statements about

underwriting impact the value of all certificates.  Even senior and performing tranches are

impacted.").  In addition, because this action alleges violations of Sections 11 and

12(a)(2) of the Securities Act, it does not raise the issues of scienter or reliance that make

establishing predominance more difficult.

---

       [5]  As the Court previously ruled, Lead Plaintiff purchased Certificates directly
from Defendant in the Offering and has standing to bring claims under Section 12(a)(2)
on behalf of a Class.  *See* March 11, 2010 Memorandum Opinion, at 7 (Dkt. No. 58).

*Sixth*, the "superiority" factor under Rule 23(b)(3) is also satisfied given: (a) the great number of investors who suffered damages as a result of the Defendant's conduct; (b) the likelihood that the many investors who lost relatively small amounts of money will not file individual actions (given the cost of litigation compared to the potential recovery); (c) the desirability of hearing all Class members' claims in one court; and (d) the absence of any difficulty in maintaining the action as a class.  Given the above, a class action is plainly "superior" to other methods of adjudication.

## STATEMENT OF FACTS

This securities class action is brought on behalf of the investors who purchased the Certificates pursuant and/or traceable to a June 28, 2006 public securities offering (defined above as the "Offering").  ¶ 1.  The Certificates were sold pursuant to a Registration Statement dated February 24, 2006 (File No. 333-132042), a Prospectus dated June 14, 2006, and a Prospectus Supplement dated June 28, 2006 (collectively, the "Offering Documents").[6]

Defendant Credit Suisse is an investment banking firm that served as the sole firm-commitment underwriter in the Offering of the Certificates.  S-1, S-132.[7]  As the sole firm-commitment underwriter, Credit Suisse purchased the Certificates from the Trust and sold them to investors, along with providing copies of the Offering Documents. ¶ 22.  Credit Suisse was responsible for ensuring the accuracy of the statements contained in the Offering Documents prior to distributing them to investors.  *Id*.  However, as

---

[6] Copies of the Prospectus and Prospectus Supplement are attached as Exhibit E to the Harrod Decl.  References to pages in the Prospectus Supplement are cited as "S _".

[7] Lehman Brothers, Inc., which is not a party to this action, was the underwriter for the Subordinated Mortgage Pass-Through Certificates.  S-1.

discussed below and as detailed in the Complaint, the Offering Documents disseminated to investors contained materially untrue statements and omitted facts required to be stated therein, in violation of Sections 11 and 12(a)(2) of the Securities Act, 15 U.S.C. §§ 77k(a), 77l(a)(2).

The Certificates were collateralized by a pool of 1,708 individual home mortgage loans (the "Mortgage Loans") originated by IndyMac Bank ("IndyMac").  S-1, S-5, S-53. The Offering Documents stated that IndyMac Bank underwrote the Mortgage Loans underlying the Certificates "according to . . . [its] underwriting guidelines," which required "an analysis of the borrower's credit history, ability to repay the mortgage loan and the adequacy of the mortgaged property as collateral."  S-62.  They also disclosed that the underwriters evaluated information about borrowers' income, assets and employment.  *See* S-61-64.

This was not the case, however.  IndyMac "embarked on a path of aggressive growth" whereby it sought to produce as many loans as possible and sell them in the secondary market.  ¶ 59.  In furtherance of this goal, and in stark contrast to the representations contained in the Offering Documents, IndyMac abandoned its stated underwriting guidelines and "routinely approved loans without regard to borrowers' ability to repay and with little, if any, review of borrower qualifications, including income assets, and employment."  ¶ 63 (internal quotation marks and citations omitted). Consequently, many borrowers were already behind in their loan payments from the moment their loans were approved, and began defaulting on their loan obligations. ¶¶ 60, 76.

As borrowers were unable to make their loan payments, delinquency and foreclosure rates for the underlying Mortgage Loans increased dramatically.  *See* ¶ 104. Such increases occurred soon after the Certificates were issued.  *Id.*  In addition, the credit rating agencies significantly downgraded the Certificates' ratings to "junk."  ¶ 90. Finally, IndyMac itself collapsed and filed for bankruptcy when it was forced to hold a large portion of its improperly-underwritten loans on its books.  ¶ 76.

## THE PROPOSED CLASS REPRESENTATIVE

Lead Plaintiff Vaszurele Ltd. is a British Virgin Islands personal holding company owned and controlled by a single shareholder, Vasili Tsereteli.[8]  Vaszurele purchased $200,000 face value Class 1-A-1 Senior Certificates in the Offering, which were purchased at a price of $1.00 per dollar of face value.[9]  After the Certificates were downgraded well below "triple-A" by the credit rating agencies, Lead Plaintiff sold its Certificates at $0.45 per dollar of face value – a loss of 55%.  *Id.*

## PROCEDURAL HISTORY

Vaszurele Ltd. was appointed Lead Plaintiff by the Court on May 5, 2009.[10]  (Dkt. No. 26).  On April 20, 2009, Lead Plaintiff filed its Amended Class Action Complaint. (Dkt. No. 25).  Defendant Credit Suisse moved to dismiss, and on March 10, 2010, the

---

[8]  *See* April 8, 2009 Certification of Vaszurele Ltd., ¶ 1 ("Vaszurele Certification"), attached as Exhibit F to the Harrod Decl.

[9]  *See* Vaszurele Certification, ¶ 2 (Harrod Decl. Ex. F).

[10]  This was pursuant to a Court Order granting Vasili Tsereteli's Motion to Substitute Vaszurele Ltd. as Lead Plaintiff in place of Vasili Tsereteli.  Vasili Tsereteli had previously been appointed Lead Plaintiff on March 16, 2009.

Court granted in part and denied in part Credit Suisse's motion to dismiss.[11]  (Dkt. No. 58).  Credit Suisse answered the Complaint on April 26, 2010.  (Dkt. No. 67).  Lead Plaintiff files this motion for class certification in accordance with the Scheduling Order entered October 15, 2010.  (Dkt. No. 73).

## ARGUMENT

Rule 23 of the Federal Rules of Civil Procedure governs class certification.  "Rule 23 is given liberal rather than restrictive construction and courts are to adopt a standard of flexibility."  *Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 96 (S.D.N.Y. 2009) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (internal quotation marks and citation omitted)); *see In re NTL, Inc. Sec. Litig.*, 02 Civ. 3013 (LAK) (AJP), 2006 U.S. Dist. LEXIS 5346, at *13 (S.D.N.Y. Feb. 14, 2006) ("The Second Circuit requires a liberal, rather than restrictive, interpretation of Rule 23 of the Federal Rules of Civil Procedure, particularly in securities cases.").  In order to qualify for class certification, the plaintiff must first demonstrate that the proposed class satisfies the four requirements of Rule 23(a), commonly referred to as "numerosity," "commonality," "typicality," and "adequacy."  *See, e.g.*, *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244 (2d Cir. 2007); Fed. R. Civ. P. 23(a).[12]  Once the requirements of Rule 23(a) are satisfied, the plaintiff must then

---

[11]   The Court granted the motions to dismiss of defendants Moody's Investors Service, Inc. and The McGraw-Hill Companies, Inc. on February 5, 2010.

[12]   Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

demonstrate that the proposed class satisfies one of the requirements of Rule 23(b).  This

Action satisfies the requirements of Rule 23(b)(3), commonly referred to as

"predominance" and "superiority."  *See e.g., Teamsters Local 445 Freight Div. Pension

Fund v. Bombadier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008); Fed. R. Civ. P. 23(b).[13]

The plaintiff bears the burden of establishing Rule 23's requirements by a

preponderance of the evidence.  *Teamsters*, 546 F.3d at 202.  A district judge is to "assess

all of the relevant evidence admitted at the class certification stage" – including evidence

submitted through affidavits, documents, or testimony – and "determine whether each

Rule 23 requirement has been met."  *In re Initial Public Offering Sec. Litig.*, 471 F.3d 24,

41-42 (2d Cir. 2006) ("*IPO I*").  While "the obligation to make such determination is not

lessened by overlap between a Rule 23 requirement and a merits issue," "a district judge

should not assess any aspect of the merits unrelated to a Rule 23 requirement."  *Id.* at 41.

"To avoid the risk that a Rule 23 hearing will extend into a protracted mini-trial of

substantial portions of the underlying litigation, a district judge must be accorded

considerable discretion to limit both discovery and the extent of the hearing on Rule 23

---

representative parties are typical of the claims or defenses
of the class; and (4) the representative parties will fairly
and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

[13]  Rule 23(b)(3) provides:

A class action may be maintained if Rule 23(a) is satisfied
and if . . . the court finds that the questions of law or fact
common to class members predominate over any questions
affecting only individual members, and that a class action is
superior to other available methods for fairly and efficiently
adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

requirements." *Id.* A class certification motion should "not become a pretext for a partial trial of the merits." *Id.*

As argued more fully below, there is ample evidence before the Court from which it can conclude that each of the requirements of Rule 23 have been met in this case, and there is no doubt that class certification is appropriate here.

## I.   THE PROPOSED CLASS SATISFIES THE PREREQUISITES OF RULE 23(a)

### A.   The Members of the Proposed Class Are So Numerous That Joinder Is Impracticable

The numerosity requirement of Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable does not mean impossible; joinder may merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *Fogarazzo*, 263 F.R.D. at 96 (citing *Cent. States*, 504 F.3d at 244-45). "Although plaintiffs need not provide a precise calculation of the size of the class, and courts are permitted to draw reasonable inferences from the available evidence, numerosity is presumed where the class consists of at least 40 members." *In re Parmalat Sec. Litig*, 04 Civ. 0030 (LAK), 2008 U.S. Dist. LEXIS 64296, at *14-15 (S.D.N.Y. Aug. 21, 2008) (Kaplan, J.) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members")).

Here, Lead Plaintiff has obtained a limited sampling of trading data from non-parties and Defendant Credit Suisse. That data has identified 569 separate Market Participants who have transacted in the Certificates since the June 2006 Offering. Harrod Decl. ¶¶ 3-11 and Exhibit A thereto. Of those 569 investors, Lead Plaintiff has used highly conservative criteria to isolate 97 investors whose identities and transactions

9

clearly establish that they are members of the Class.  Harrod Decl. ¶¶ 12-13 and Exhibit

B thereto.  Given that 569 market participants and 97 Class members have already been

identified based on only a portion of the potentially available trading data and by utilizing

conservative assumptions in tabulating the total number of Class members, Lead Plaintiff

believes that there are a minimum of several hundred Class members.  Harrod Decl. ¶ 14.

The existence of at least 97 Class members is more than sufficient to satisfy the

numerosity requirement of Rule 23(a)(1).  *See Consol. Rail Corp.*, 47 F.3d at 483

(finding that, regardless of whether the number of defendants in the defendant class is

calculated as "700" or "300," it "vastly exceeds" the 40 member threshold such that

"joinder of individual members . . . [would be] impracticable"); *Parmalat*, 2008 U.S.

Dist. LEXIS 64296 at *16 (finding numerosity because the number of domestic retail

investors in the company's common stock "exceed[ed] the presumptive threshold for a

finding of numerosity" despite the fact that the evidence indicated that such number of

investors was "small").

### B. There Are Questions of Law and Fact Common to the Members of the Class

The commonality requirement of Rule 23(a)(2) requires that "there are questions

of law or fact common to the class."  Fed. R. Civ. P 23(a)(2).  The commonality

requirement "has been applied permissively in securities fraud litigation and generally is

satisfied where putative class members have been injured by similar material

misrepresentations and omissions."  *Parmalat*, 2008 U.S. Dist. LEXIS 64296, at *16

(internal quotation marks and citation omitted).  "Commonality does not mandate that all

class members make identical claims and arguments."  *Trief v. Dun & Bradstreet Corp.*,

144 F.R.D. 193, 198 (S.D.N.Y. 1992) (citing *Port Auth. Police Benvolent Ass'n v. Port*

*Auth.*, 698 F.2d 150, 153-54 (2d Cir. 1983)).  "Even a single common legal or factual question will suffice."  *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 70 (S.D.N.Y. 2009) (internal quotation marks and citation omitted).  Thus, this requirement "has been characterized as a low hurdle."  *NTL*, 2006 U.S. Dist. LEXIS 5346, at *22 (internal quotation marks and citations omitted).  "When common questions do predominate, differences among the questions raised by individual [class] members will not defeat commonality."  *Fogarazzo*, 263 F.R.D. at 96 (internal quotation marks and citation omitted).  "The critical inquiry is whether the common questions are at the core of the cause of action alleged."  *Parmalat*, 2008 U.S. Dist. LEXIS 64296, at *17-18 (internal quotation marks and citation omitted).

In order to prove its Section 11 and 12(a)(2) claims, Plaintiff must prove that: (1) the Offering Documents contain untrue statements or omit statements of fact; (2) that the untrue statements or omissions are "material"; and (3) that Class members have sustained damages.  *See* 15 U.S.C. §§ 77k(a), 77l(a)(2) (listing a virtually identical standard for Section 12(a)(2) claims); Complaint at ¶ 110a-c (alleging substantially similar common questions).  These are the very same elements that all Class members would need to demonstrate to establish a *prima facie* case of liability.

1.      *Whether the Offering Documents contain untrue statements or omitted statements of fact*.  The existence and nature of the alleged untrue statements or omissions regarding the underwriting standards used to originate the Mortgage Loans are common to all Class members, as they were contained in the same set of Offering Documents made available to each Certificate purchaser, and are therefore the predicate for each Class members' claims.  The specific common statements in the Offering

Documents alleged to be untrue or omit facts include that IndyMac underwrote the Mortgage Loans underlying the Certificates "according to . . . [its] underwriting guidelines," S-61, and that those guidelines required loan underwriters to perform "an analysis of the borrower's credit history, ability to repay the mortgage loan and the adequacy of the mortgaged property as collateral." S-62. In addition, the extensive discussion of IndyMac's seven loan documentation programs includes statements that loan underwriters evaluated information about borrowers' income, assets and employment included in loan applications. S-62-63. These common statements were referenced in the Court's March 11, 2010 Memorandum Opinion (Dkt. No. 58), at 8.

2.      *Whether the untrue statements or omissions are "material."* The untrue statements or omissions concerning the underwriting of the Mortgage Loans were material to all Class members. *See* Feinstein Report at ¶ 79 ("Information about the mortgage pool underwriting process matters greatly to investors as they value mortgage-backed securities and make investment decisions.").

3.      *To what extent the members of the Class have sustained damages pursuant to the statutory measure of damages.* Class members' damages will be proven by means of the statutory method of calculating damages resulting from violations of Sections 11 and 12(a)(2) of the Securities Act, which is provided in Sections 11(e) and 12(b) of the Securities Act, 15 U.S.C. §§ 77k(e), 77l(b), and is common and readily applicable to all Class members.[14] *See* Feinstein Report at ¶ 82 ("Damages suffered by the Plaintiff and

---

[14] While the amount of damages determined by application of these methods may be reduced by any amount established by Defendant not to be related to the alleged untrue statements and/or omissions (*e.g.*, "negative causation"), such proof is necessarily common to the Class. Indeed, the sole question here that is not subject to common proof is the amount of each Class member's damages. Individual questions of damages,

Class can readily be computed by applying the statutory arithmetic formulas, using investor trading records and data from available databases.  The attribution of damages among the investors is a straightforward computational matter.").

"These questions, and the factual bases upon which they rest, clearly are common to all class members."  *Parmalat*, 2008 U.S. Dist. LEXIS 64296, at *18-19 (commonality requirement satisfied where plaintiff raised several common issues similar to those alleged by Lead Plaintiff here, including "whether the federal securities laws were violated by the defendants' acts as alleged," "whether statements made by the defendants . . . misrepresented material facts," and "whether the members of the Class have sustained damages").  *See, e.g., Flag I*, 245 F.R.D. at 158 (listing numerous common issues sufficient to satisfy commonality requirement that are similar to those alleged by Lead Plaintiff here and concluding that "courts have consistently found substantially similar allegations to be sufficient" to demonstrate commonality); *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (same).  Accordingly, Rule 23(a)(2) is satisfied.

---

however, are found in every securities class action and are no bar to class certification. *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 160 (S.D.N.Y. 2007), *aff'd in part, vacated in part on other grounds*, 574 F.3d 29 (2d Cir. 2009) ("*Flag I*") ("[I]t is well-established that 'the fact that the interests of some members of the class may ultimately diverge when it comes time to allocate damages does not warrant the denial of class certification where, as here, there is no current conflict that goes to the heart of the lawsuit.'") (internal quotation marks and citation omitted); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 302 (S.D.N.Y. 2003) ("When liability can be determined on a class-wide basis, individualized damage issues are not ordinarily a bar to class certification.").

C.    **Lead Plaintiff's Claims Are Typical of the Claims of Other Class Members**

The typicality requirement of Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The purpose of the Rule 23(a) typicality requirement is to ensure that a class representative has the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions."  *NYSE Specialists*, 260 F.R.D. at 71 (internal quotation marks and citation omitted).  Typicality "'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Parmalat*, 2008 U.S. Dist. LEXIS 64296, at *19 (quoting *Cent. States*, 504 F.3d at 245).  "It is oft-said that 'when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.'"  *Flag I*, 245 F.R.D. at 158-59 (quoting *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993)).

"Although 'it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.'"  *Parmalat*, 2008 U.S. Dist. LEXIS 64296, at *19 (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59-60 (2d Cir. 2000) (citations omitted)).  "The unique defense rule, however, is not rigidly applied in this Circuit."  *Id.* (internal quotation marks and citation omitted).  As this Court explained in *Parmalat*, the unique defense rule:

> is intended to protect [a] plaintiff class--not to shield defendants from a potentially meritorious suit and has generally been applied only where a full defense is available against an individual plaintiff's action. Moreover, it is beyond reasonable dispute that a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members."

*Id*. at \*19-20 (internal quotation marks and citations omitted).

Here, Lead Plaintiff's claims are typical of the claims of the Class because the claims all arise out of the same course of conduct.  As alleged in the Complaint, Lead Plaintiff and the Class purchased their Certificates pursuant to Offering Documents that contained materially untrue statements and omissions regarding the underwriting guidelines purportedly followed (but actually abandoned) during the origination of the Mortgage Loans serving as the Certificates' collateral.  As a result of these untrue statements and omissions, Lead Plaintiff and the Class were damaged and are entitled to recover damages in accordance with the statutory formulas set forth in Sections 11(e) and 12(b) of the Securities Act.

Moreover, the proof needed by Lead Plaintiff to prevail on its claim is the same that is needed to prove the claims of the rest of the Class.  *See, e.g., NYSE Specialists*, 260 F.R.D. at 72-73 ("As long as plaintiffs assert, as they do here, that defendants committed the same wrongful acts in the same manner, against all members of the class, they establish the necessary typicality.") (internal quotation marks and citation omitted); *Vivendi*, 242 F.R.D. at 85 (finding typicality requirement satisfied where, "[i]n prosecuting their case, plaintiffs will necessarily seek to develop facts relating to the . . . allegedly false or misleading statements underlying their claims" that arise out of the same uniform pattern of conduct central to all proposed class members' claims).

Finally, Lead Plaintiff is subject to no unique defenses that could threaten to become the focus of the litigation.  Accordingly, Lead Plaintiff's claims are typical of the claims of the Class within the meaning of Rule 23(a)(3).

> **D.    Lead Plaintiff Will Fairly and Adequately
> Represent the Class**

The adequacy requirement of Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent," and therefore "'tends to merge' with the commonality and typicality criteria of Rule 23(a)."  *Amchem Products, Inc.*, 521 U.S. 591, 625, 626 n.20 (1997) (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157-58, n.13 (1982)).  "Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *Baffa*, 222 F.3d at 60.[15]

To satisfy the adequacy requirement, a class representative must "be aware of the basic facts underlying the lawsuit and not likely to abdicate his obligations to fellow class members."  *See In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 135 (S.D.N.Y. 2008) (internal quotation marks and citation omitted).  While this "standard is not so low as to be meaningless," it is a "modest" one.  *Id.*  Specifically, "in complex actions such as securities actions, a plaintiff need not have expert knowledge of all aspects of the case to

---

[15]  "As a result of the 2003 amendments to the Federal Rules of Civil Procedure, . . . the issue of appropriate class counsel is guided by Rule 23(g) rather than Rule 23(a)(4)."  *NTL*, 2006 U.S. Dist. LEXIS 5346, at *41-42 (discussing class counsel's adequacy under both provisions).

qualify as a class representative, and a great deal of reliance on the expertise of counsel is to be expected." *Id*. (internal quotation marks and citation omitted).  Further, while "class representative status may properly be denied 'where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys,'" the Supreme Court has "expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance."  *Baffa*, 222 F.3d at 61 (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-74 (1966)) (citation omitted).

The adequacy requirement is satisfied here.  ***First***, Lead Plaintiff's interests are not antagonistic to those of the Class.  Lead Plaintiff purchased its Certificates issued in the Offering pursuant to the same Offering Documents – containing the same materially untrue statements and omissions – as all other Class members, and suffered damages determined by the statutory measure of damages.  *See* Vaszurele Certification (Harrod Decl., Ex. F).  Accordingly, it is in the interest of Lead Plaintiff to vigorously prosecute this action.

Further, Lead Plaintiff understands its role and obligation as Class representative to represent the Class, and accordingly, it has been protecting the Class's interests for over two years, without any concerns raised as to its ability to vigorously represent the Class's interest in this action.[16]  Through its experienced counsel, Lead Plaintiff has,

---

[16]  In connection with this action, an authorized representative of Vaszurele Ltd. has certified that Vaszurele Ltd.: (i) reviewed the complaint; (ii) did not purchase securities at the direction of counsel or in order to participate in this litigation; (iii) is willing to serve as a representative party on behalf of the Class; and (iv) will not accept any payment for serving as a representative party on behalf of the Class beyond its *pro*

among other things: investigated and filed the Complaint, opposed motions to dismiss the Complaint, issued discovery requests to Defendant, obtained discovery from 18 non-parties to date, reviewed documents, retained an expert, and responded to Defendants' discovery requests.  In addition, Lead Plaintiff, through its controlling shareholder, will provide deposition testimony, will testify at trial, will participate in settlement discussions and will generally supervise the conduct of this Action.  These facts all support a finding of adequacy.  *See Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 177-78 (S.D.N.Y. 2008) (finding that similar facts supported finding of adequacy of proposed class representative, despite arguments about credibility of the plaintiff).

 ***Second***, Lead Plaintiff is represented by experienced securities class action counsel Wolf Popper LLP ("Wolf Popper").  As the docket demonstrates, Lead Plaintiff, through its counsel, has vigorously prosecuted this action on behalf of the Class.  As evidenced by its firm résumé, which is attached hereto as Exhibit G to the Harrod Decl., and its performance in the litigation thus far, court-appointed lead counsel Wolf Popper is amply qualified, experienced and able to conduct this litigation vigorously and effectively.

 Accordingly, Lead Plaintiff satisfies the adequacy requirement of Rule 23(a)(4) and all the requirements of Rule 23(a).

## II. THE PROPOSED CLASS SATISFIES THE PREREQUISITES OF RULE 23(b)(3)

 Rule 23(b)(3) sets forth two requirements.  The first is that the questions of law or fact common to the members of the class must "predominate" over any questions

---

*rata* share of any possible recovery, except as ordered or approved by the court.  *See* Vaszurele Certification (Harrod Decl., Ex. F).

affecting only individual members. Fed. R. Civ. P. 23(b)(3). The second is that a class

action be "superior" to other available methods for the fair and efficient adjudication of

the controversy. *Id.*

A.   **Common Questions of Law and Fact**
     **Predominate**

Rule 23(b)(3)'s first requirement is that "questions of law or fact common to class

members predominate over any questions affecting only individual members." Fed. R.

Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are

sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521

U.S. at 623. "Class-wide issues predominate if resolution of some of the legal or factual

questions that qualify each class member's case as a genuine controversy can be achieved

through generalized proof, and if these particular issues are more substantial than the

issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247,

1252 (2d Cir. 2002) (citation omitted). "Common issues may predominate when liability

can be determined on a class-wide basis, even when there are some individualized

damage issues." *NTL*, 2006 U.S. Dist. LEXIS 5346, at *48 (internal quotation marks and

citation omitted). According to the Supreme Court, "[p]redominance is a test readily met

in certain cases alleging . . . securities fraud." *Amchem Prods.*, 521 U.S. at 625 (citation

omitted).

In this case, the common questions of law and fact include whether Defendant

Credit Suisse violated Sections 11 and 12(a)(2) of the Securities Act by offering and

selling securities pursuant to Offering Documents containing materially untrue statements

and omissions. These common questions clearly predominate over any conceivable

individual questions because the alleged untrue statements and omissions at issue were

contained in (or missing from) the same set of Offering Documents provided to all Certificate holders (*i.e.*, putative Class members). *See Vivendi*, 242 F.R.D. at 90 (finding predominance requirement satisfied where "[a]ll plaintiffs will rely on the same or substantially similar documents, statements, and legal theories to prove the defendants' liability."); *see also In re Warner Chilcott Ltd. Sec. Litig.*, 06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 7613, at *4 (S.D.N.Y. Feb. 4, 2008) (in class action brought pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act, holding that common questions predominate over individual ones because "[t]he proposed class members all purchased shares of Warner Chilcott common stock [in connection with its initial public offering] and claim they were damaged by Defendants' omissions and misrepresentations"). Furthermore, as the alleged untrue statements and omissions concerned the underwriting practices used to originate the entire group of Mortgage Loans, they would have similarly affected all Certificates, regardless of their place in the capital structure. *See* Feinstein Report at ¶ 81 ("Untrue statements about underwriting impact the value of all certificates. Even senior and performing tranches are impacted."). As such, the predominance requirement of Rule 23(b)(3) is satisfied.[17]

---

[17] Because the Complaint does not allege that Defendant Credit Suisse committed fraud under Section 10(b) of the Securities Exchange Act of 1934, issues of scienter and reliance are not at issue in this action and are therefore not a bar to finding predominance. *See In re Initial Public Offering Litig.*, 483 F.3d 70, 73 n.1 (2d Cir. 2007) ("*IPO II*") ("'Neither Section 11 nor Section 12(a)(2) requires that plaintiffs allege the scienter or reliance elements of a fraud cause of action'") (quoting *Rombach v. Chang*, 355 F.3d 164, 169 n.4 (2d Cir. 2004)). Furthermore, it is not plaintiff's burden to prove loss causation. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35-36 (2d Cir. 2009) ("*Flag II*") ("It is well-established that plaintiffs alleging claims under Section 10(b) of the '34 Act must prove loss causation. . . . . By contrast, under the '33 Act, it is the defendant who bears the burden of demonstrating that something other than the misstatement at issue caused plaintiff's loss.").

**B.**   **A Class Action Is the Superior Method of Adjudicating the Claims Asserted Here**

Rule 23(b)(3)'s second requirement is that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "As courts have frequently noted, class action treatment is particularly appropriate when plaintiffs seek redress for violations under the securities laws." *Vivendi*, 242 F.R.D. at 91 (citing cases).  "Accordingly, securities cases 'easily satisfy the superiority requirement of Rule 23.'"  *NYSE Specialists*, 260 F.R.D. at 80 (quoting *In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999)).

Courts analyzing whether the class action device is a superior method are guided by the four "nonexhaustive" factors listed in Rule 23(b)(3).  *See Amchem Prods.*, 521 U.S. at 615.  These factors are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).  Each factor counsels strongly in favor of certifying the Class.

Individual Class members have demonstrated little or no interest in controlling the prosecution of separate actions, given the great number of investors who suffered damages as a result of the Defendant's conduct and the likelihood that many investors who lost relatively small amounts of money would not file individual actions (given the cost of litigation compared to the potential recovery).  Indeed, Lead Plaintiff is not aware of any individual actions that have been filed to date.  In addition, maintaining a

consolidated class action in this District ensures an efficient expenditure of judicial and

private resources, as Defendant is located here; while individual Class members are

located in geographically diverse areas.[18]  Finally, there is no reason to expect any

difficulties in the management of this class action that would counsel against class

certification.

### III.    THE COURT SHOULD APPOINT LEAD COUNSEL FOR LEAD PLAINTIFF AS CLASS COUNSEL UNDER RULE 23(g)

"[A] court that certifies a class must appoint class counsel."  Fed. R. Civ. P.

23(g)(1).  In doing so, a court "must consider" the following:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

---

[18]  Not only would separate and possibly scattered actions be needlessly repetitive and inefficient in the absence of class certification, but the plain reality is that most Class members would be discouraged from even seeking relief because their potential recovery would be outweighed by the costs of pursuing litigation.  *See DuPont Glore Forgan, Inc. v. Am. Tel. & Tel. Co.*, 69 F.R.D. 481, 487 (S.D.N.Y. 1975) (superiority requirement met in class action where class representative's claim was worth $130,000, where court accepted class counsel's argument that "the time-cost factor of legal fees in view of the vigor of defendants' opposition, ma[k]e it uneconomical to proceed with the suit on an individual basis even assuming an ultimate recovery").  In fact, this securities class action is the only practicable means for adjudicating the claims asserted here.  *See Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") (internal quotation marks and citation omitted).  It is quite clear that in the absence of class certification, the case would disappear.  *See DuPont*, 69 F.R.D. at 487 ("The hard fact is that economic reality indicates the likelihood that unless this action is permitted to proceed as a class suit, it is the end of this litigation.").

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  In addition, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).  Lead Plaintiff respectfully requests that Wolf Popper be appointed class counsel here.

As discussed above, Wolf Popper has performed substantial work in identifying and investigating the claims asserted, has substantial experience in handling class actions asserting claims of this type, and has committed and will continue to commit substantial resources to representing the Class.  For these reasons and for the reasons set forth in its firm résumé, Wolf Popper will fairly and adequately represent the Class.

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that this Court: (i) certify this action to proceed as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; (ii) appoint Lead Plaintiff to serve as the Class Representative; (iii) appoint Wolf Popper as Class Counsel pursuant to Rule 23(g); and (iv) grant such other and further relief as the Court deems just and proper.

Dated: December 10, 2010
        New York, New York

                                        Respectfully Submitted

                                        **WOLF POPPER LLP**

                                        s/ *James A. Harrod*
                                        _____
                                        Lester L. Levy (#LL-9956)
                                        James A. Harrod (#JH-4400)
                                        Robert S. Plosky (#RP-7829)
                                        Wolf Popper LLP
                                        845 Third Avenue, 12th Floor
                                        New York, New York 10022
                                        Telephone:     212.759.4600
                                        Facsimile:     212.486.2093

                                        *Lead Counsel for Lead Plaintiff and*
                                        *the Proposed Class*