**UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
VASILI TSERETELI, and VASZURELE LTD.
on behalf of themselves and all others similarly
situated,

                        Plaintiffs,

                                                         No. 08-cv-10637 (LAK)

    -against-

                                                          ECF Case

RESIDENTIAL ASSET SECURITIZATION
TRUST 2006-A8, CREDIT SUISSE SECURITIES
(USA) LLC, MOODY'S INVESTORS SERVICE,
INC., and THE McGRAW-HILL COMPANIES, INC.

                       Defendants.
-----------------------------------------------------------------X

**DECLARATION OF JAMES A. HARROD IN**
**SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

I, James A. Harrod, declare, under penalty of perjury, as follows:

      1.     I am a member of the law firm Wolf Popper LLP ("Wolf Popper"), counsel for Lead Plaintiff Vaszurele Ltd. ("Lead Plaintiff" or "Vaszurele")[1], in the above-captioned action, and am admitted to the Bar of the State of New York and the Bar of the United States District Court for the Southern District of New York.

      2.     I submit this Declaration in support of Lead Plaintiff's Motion for Class Certification, being filed contemporaneously herewith (the "Motion").

**Numerosity**

      3.     The Class includes those persons who acquired beneficial ownership of the Certificates issued pursuant and/or traceable to the Offering Documents.  In

---

[1] Any capitalized terms undefined herein shall have the meanings assigned in Lead Plaintiff's accompanying Memorandum of Law.

Doc. 169653

connection with efforts to identify the number of investors who are members of the Class, Lead Plaintiff subpoenaed The Depository Trust Company ("DTC"). As set forth in the Prospectus Supplement (attached hereto as Exhibit E), the DTC compiles records of the "Financial Intermediaries" who serve as the nominal (or record) owners of the Certificates and who would, in turn, possess information reflecting the beneficial owners in the Certificates. In effect, the DTC acts as a centralized repository for all record ownership of the Certificates:

> Persons acquiring beneficial ownership interests in the Book-Entry Certificates ("Certificate Owners") may elect to hold their Book-Entry Certificates through The Depository Trust Company ("DTC") or, upon request, through Clearstream, Luxembourg (as defined in this prospectus supplement) or the Euroclear System ("Euroclear"), if they are participants of such systems, or indirectly through organizations that are participants in such systems. The Book-Entry Certificates will be issued in one or more certificates that equal the aggregate Class Certificate Balance or Notional Amount of the offered certificates, as applicable, and will initially be registered in the name of Cede & Co., the nominee of DTC.
>
> \*   \*   \*
>
> Certificate Owners are only permitted to exercise their rights indirectly through the participating organizations that utilize the services of DTC, including securities brokers and dealers, banks and trust companies and clearing corporations and certain other organizations ("Participants") and DTC.
>
> The Certificate Owner's ownership of a Book-Entry Certificate will be recorded on the records of the brokerage firm, bank, thrift institution or other financial intermediary (each, a "FINANCIAL INTERMEDIARY") that maintains the beneficial owner's account for such purpose. In turn, the Financial Intermediary's ownership of such Book-Entry Certificate will be recorded on the records of DTC (or of a participating firm that acts as agent for the Financial Intermediary, whose interest will in turn be recorded on the records of DTC, if the Certificate Owner's Financial Intermediary is not a DTC participant and on the records of Clearstream, Luxembourg or Euroclear, as appropriate).

Prospectus Supplement at 76.

169653                                          2

> Under the DTC Rules and in accordance with DTC's normal procedures, transfers of ownership of Book-Entry Certificates will be executed through DTC and the accounts of the respective Participants at DTC will be debited and credited. Similarly, the Participants and Indirect Participants will make debits or credits, as the case may be, on their records on behalf of the selling and purchasing Certificate Owners.

Prospectus Supplement at 77.

4. Pursuant to a subpoena, the DTC produced to Lead Plaintiff, in the form of "position reports," a sampling of its records identifying those nominal owners who held Certificates.

5. Based on the nominal owners identified in the DTC production and its own investigation of financial institutions that participated in the market for the Certificates, Lead Plaintiff has subpoenaed multiple third parties and served document requests on Defendant Credit Suisse Securities USA LLC ("Defendant" or "Credit Suisse") seeking trading records and other information about the market for the Certificates.

6. As of December 9, 2010, we have been able to obtain trading records and other data reflecting transactions or holdings in the Certificates from Credit Suisse and numerous third parties, including:

    i. DTC

    ii. Citigroup

    iii. Goldman Sachs

    iv. Pershing LLC

    v. First Clearing

    vi. JP Morgan Chase

    vii. RBC (Royal Bank of Canada)

        viii.    Deutsche Bank

        ix.    Morgan Stanley

        x.    Brown Brothers Harriman

        xi.    PNC Bank

        xii.    CIBC

        xiii.    Charles Schwab

        xiv.    State Street

        xv.    Stifel Nicolaus

        xvi.    National Financial

        xvii.    Northern Trust

        xviii.    UBS

7.    The documents produced by the 18 third parties identified in paragraph 6 have been provided to Defendant.

8.    In addition to those third parties identified in paragraph 6, we have outstanding subpoenas to several other third parties who we have identified as potential participants in the market for the Certificates. We believe that there are likely other third parties who we have not yet been able to identify and who possess additional trading records. Accordingly, the evidence we have obtained to date represents only a portion of the total universe of trading data.

9.    The trading data produced by Defendant and the third parties identified in paragraph 6 included information reflecting transactions by both beneficial and nominal owners of the Certificates. The trading data produced was broken down by identifying either the owner of the account by name, or by some unique account identifier (*e.g.*, a

partial account number, or a unique alphanumeric code assigned by the producing entity). For the purposes of this Motion, we refer to each individual account, irrespective of whether the account is named or otherwise identified, as a "Market Participant."

10. Most of the data produced also identified the Market Participant's transactions by CUSIP, trade type (buy/sell), trade/settlement date, price and/or principle amount, and quantity.

11. Lead Plaintiff compiled the trading records produced and arranged the transactions by Market Participant. The documents produced by Defendant and the third parties listed above identify a total of 569 Market Participants who have transacted in the Certificates since they were offered in June 2006. Lead Plaintiff has compiled a true and correct representation of the data reflected in the documents produced in the schedule attached as Exhibit A hereto.[2]

12. Based on the list of Market Participants, we isolated those investors who were members of the Class. We have identified 97 such Class members. That list of Class members, attached hereto as Exhibit B, is a true and correct representation of the data reflected in the documents produced.[3]

13. In determining those Market Participants who were also Class members we eliminated any accounts that:

---

[2] Exhibit A reflects Market Participants who were identified in the documents produced as of December 9, 2010. Some Market Participants were identified in documents produced by more than one entity, as reflected in the columns "Producing Entity(2)" and the "CUSIP(s)" column to the right. Exhibit A first identifies the 447 Market Participants whose accounts were identified by name in the data produced, then lists, by the unique identifiers assigned by the producing entity, the 122 Market Participants that have not been identified by name.

[3] Exhibits A and B hereto both contain information designated Confidential under the Confidentiality Order in this Action. Accordingly, Lead Plaintiff has removed these schedules from the documents filed with the District's ECF System and is contemporaneously moving to maintain those documents under seal. The Court and Defendant will be provided with unredacted versions of this submission.

169653                                    5

    i. Could not reasonably be identified as representing the transactions of a beneficial owner, including all 122 unidentified Market Participants;[4]

    ii. Reflected the transactions of a beneficial owner whose trading appears to have resulted in a gain;

    iii. Reflected sales transaction but did not reflect purchases, making it impossible to confirm that the investor had not experienced a gain on its transactions;

    iv. Did not include sufficient transactional data to confirm that the Market Participant was a Class member; and

    v. Reflected an initial purchase occurring after January 2009.[5]

  14. We believe that in applying these criteria we have arrived at a list of Class members that is extremely conservative. We believe that further discovery would identify that the Class is a significant multiple of 97. First, the list of Market Participants compiled to date represents only part of the available universe of data and would be subject to refinement through additional discovery, if necessary. Second, the data related to numerous of the Market Participants was ambiguous as to whether they were beneficial owners. Many of the Market Participants are financial institutions and may have traded in the Certificates for their own accounts, and if they did, would be beneficial owners of the Certificates. Assuming those financial institutions otherwise fit the criteria, they are also Class members. To the extent that those financial institutions were acting as nominees for clients or customers, each such financial institution likely represents at least one, but more likely multiple, additional Class members.

---

[4] In evaluating whether a name identified in the list of Market Participants was a beneficial owner Lead Plaintiff only included those accounts that reflected (a) an individual's name, (b) an account held for the benefit of an individual or family (IRA or other retirement accounts and family trusts), (c) investment vehicles holding title for their own benefit (mutual funds, limited partnerships and collateralized debt obligations (CDOs)), and (d) non-financial institutions (universities and charitable organizations).

[5] Certain of those Market Participants identified in Exhibit A did not include all of the data identified in paragraph 10, thus to the extent that transaction data was omitted or not understandable, those additional Market Participants may be Class Members.

**Additional Exhibits In Support of the Motion**

15. Attached hereto as Exhibit C is a true and correct copy of Lead Plaintiff's April 16, 2009 Amended Class Action Complaint.

16. Attached hereto as Exhibit D is a true and correct copy of the December 10, 2010 Expert Report of Professor Steven P. Feinstein, PH.D., CFA.

17. Attached hereto as Exhibit E is a true and correct copy of the June 14, 2006 Prospectus and June 28, 2006 Prospectus Supplement.

18. Attached hereto as Exhibit F is a true and correct copy of the April 8, 2009 Certification of Vaszurele Ltd.

19. Attached hereto as Exhibit G is a true and correct copy of Wolf Popper LLP's Firm Résumé.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct, this 10th day of December 2010.

                                              s/ James A. Harrod
                                                 James A. Harrod